**No. 14-1052**

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

In re Adrianus Johannes Maria Reijers

---

APPEAL FROM THE U.S. PATENT AND TRADEMARK OFFICE,
BOARD OF PATENT APPEALS AND INTERFERENCES
Appeal 2012-004255
Application No. 11/718,322

---

**"CORRECTED" BRIEF FOR APPELLANT**

---

Timothy J. Zarley
Attorney for Appellant
ZARLEY LAW FIRM, P.L.C.
400 Locust Street
Capital Square, Suite 200
Des Moines, Iowa 50309-2350
Phone: 515-558-0200
E-mail: tzarley@zarleylaw.com
Fax: 515.558.7790

## CERTIFICATE OF INTEREST

Counsel of record for the Appellant In re Adrianus Johannes Maria Reijer certifies the following:

1.     The full name of every party or amicus represented by me is:

Stork Townsend B.V.

2.     The name of the real party in interest represented by me is:

Stork Townsend B.V.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:  Marel hf is the parent of Marel Holding B.V. which is the parent of Stork Townsend B.V. Marel hf is listed on the NASDAQ OMX Iceland under the symbol MARL.

4.     The names of all law firms and the partners or associates that appeared for the party represented by us in the trial court and who are expected to appear in this Court are as follows:

Timothy J. Zarley, Zarley Law Firm, P.L.C.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASES ........................................... 1

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF THE ISSUES ....................................................... 1

STATEMENT OF THE CASE............................................................ 2

STATEMENT OF THE FACTS ......................................................... 2

SUMMARY OF THE ARGUMENT ................................................. 6

SUMMARY OF THE ARGUMENT ................................................. 6

ARGUMENT .................................................................................... 7

   I.   Standard Of Review...................................................................... 7

      A.   Appellant's Invention ......................................................... 7

      B.   U.S. Patent No. 2,211,490 By Braun...................................... 9

      C.   The Gas Flows Of Braun Do Not Necessarily Blow Liquid From The Food Product....................................................................... 11

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......... 13

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......... 13

ARGUMENT .................................................................................... 14

PATENT BOARD DECISION - EXAMINER AFFIRMED

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Statutes**

28 U.S.C. § 1295(a) ................................................................................................1

28 U.S.C. § 2107(b) ................................................................................................1

35 U.S.C. § 102 ...................................................................................................2, 3

35 U.S.C. § 103 ...................................................................................................2, 4

35 U.S.C. § 120 ......................................................................................................2

35 U.S.C. § 134 ......................................................................................................2

35 U.S.C. § 141 ......................................................................................................1

35 U.S.C. § 142 ......................................................................................................1

37 C.F.E. § 1.304 ...................................................................................................1

Fed. Cir. Rule 15(a)(1) ..........................................................................................1

## I.   STATEMENT OF RELATED CASES

No other appeal in or from this same civil action in the U.S. Patent and Trademark Office has been before this Court or any other appellate court.

There are no cases known to counsel that are pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## II.   JURISDICTIONAL STATEMENT

This Court has exclusive jurisdiction over the present appeal under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141.  The present appeal is from a Decision on Appeal by the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office affirming the final rejection of the claim submitted by Appellant in the United States Patent Application Serial No. 11/718,322.

The date of the Decision on Appeal by the Board, which is an appealable final order, is July 22, 2013.  A Notice of Appeal to this Court was timely filed and served on the Solicitor for the United States Patent and Trademark Office on September 20, 2013, pursuant to 35 U.S.C. § 142, 37 C.F.E. § 1.304, 28 U.S.C. § 2107(b), and Fed. Cir. Rule 15(a)(1).

## III.   STATEMENT OF THE ISSUES

Whether the Board erred in finding that claims 11-12 are anticipated

under 35 U.S.C. § 102(b) by Braun (U.S. 2,211,490 patented August 13, 1940) and claims 13 and 14 under 35 U.S.C. § 103(a) are unpatentable over Braun.

## IV.    STATEMENT OF THE CASE

This is an appeal under 35 U.S.C. § 134 from the July 22, 2013 decision of the Board of Appeal and Interferences (**A1-5**) which affirmed in part the Examiner's rejection of March 17, 2011 finding claims 11 and 12 anticipated by Braun under 35 U.S.C. § 102(b) and claims 13 and 14 unpatentable over Braun under 35 U.S.C. § 103(a).  (**A4**).

## V.    STATEMENT OF THE FACTS

The present application was filed on April 7, 2007 and claims priority pursuant to 35 U.S.C. § 120 from PCT/NL2005/050019 filed on October 20, 2005 which claimed priority of NL 1027318 filed October 22, 2004. (**A113-115**).

The claims on appeal include claims 11-14 which are set forth below:

**11.**    Method for removing liquid (3, 24, 36) from the surface of a food product (2, 23, 31), characterised [*sic*] in that the food product (2, 23, 31) is supplied as a food strand (2, 23, 31), which food strand (2, 23, 31) is successively carried through a plurality of gas flows (11) wherein a supply means for gas (6, 7; 21, 22; 39; 50) is placed adjacently of a transport route of the food product and the supply means for gas (6, 7; 21, 22; 39; 50) are adapted to generate the plurality of gas flows (11) crossing the transport route successively in the direction of transport wherein the separate gas flows (11) originate from placed-apart slots (52) to blow liquid from the food product (2, 23, 31) in a

2

number of phases by a number of successive and mutually separated gas knives.

**12.** Method as claimed in claim 11, characterized in that the food strand (2, 23, 31) undergoes varying flow conditions while being carried through the gas flows (11).

**13.** Method as claimed in claim 11, characterized in that the food strand (2, 23, 31) is carried successively through a gas flow (11) and a segment with a substantially stationary gas condition.

**14.** Method as claimed in claim 11, characterized in that the flow rate of the gas flow (11) amounts to at least 5 metres [*sic*] per second.

(**A32**).

On March 17, 2011, the Examiner rejected claims 11 and 12 under 35 U.S.C. § 102(b) as being anticipated by Braun. (**A38**). In support of this rejection, the Examiner stated the following:

> **Regarding claim 11,** Braun discloses a method of drying tubular products, such as artificial sausage skins in drying chambers in which hot air or hot gas (pg. 1, col. 1, lines 1-8) is added by leading the tubular product over conveyor belts (transport route) (pg. 1, col.1, lines 13-14). Braun discloses a drying apparatus where drying gas is blown by a blower (supply means of gas) to a channel comprising gas outlets (pg. 1, col. 2, lines 35-55). Braun further discloses the drying channel includes a plurality of narrow slots separated by small intervals (col. pg. 2, lines 6-14; 24-27; 48-57).
>
> Braun is considered to disclose that a plurality of gas flows over the sausage food product to dry the sausage. Additionally, Braun's plurality of narrow slots for blowing drying gas over sausage is considered to release the gas flow over the sausages. Inasmuch as applicant has defined "placed-apart slots" in the

specification on page 3, paragraph 3, lines 24-27, the slots of
Braun are considered to meet the limitation of "placed apart
slots". The gas flows formed by Braun are considered to
generate gas "knives" since the flow of gas through each slot is
successive and mutually separated gas flow. Inasmuch as
applicant has defined "knives", a separate gas flow is
considered to meet this limitation.

**Regarding claims 12,** the Examiner considers the difference
between the separated small intervals spacing between the slots
provides varying flow conditions in Braun's airflow from slots
to tubular strand product.

(**A39**).

The Examiner also rejected claims 13 and 14 under 35 U.S.C. § 103(a) as

being unpatentable over Braun. (**A40**).  In support of this rejection, the

Examiner stated the following:

**Regarding claim 13,** Braun discloses drying sausage through
varying airflows produced by narrow slots in a drying chamber
to remove moisture. Braun is silent on sausage exposure to an
area (segment) wherein the gas condition is stationary.
However, it would have been obvious to one of ordinary skill
in the art to store or pack dried sausages in a controlled area
such as refrigerated room with substantially stable fixed
(stationary) gas conditions to retard microbial growth and
ensure prolong shelf life.

**Regarding claim 14,** Braun discloses the claimed invention as
discussed above. Braun discloses speed and distance traversed
by the tubular product on the conveyor belt system (pg. 1, col.
1, lines 17-25) for proper drying and increase production.
Braun is silent on the flow rate of the gas flow in the amount
of at least 5 meters per seconds. However, it would have been
obvious to one of ordinary skill in the art to adjust working
conditions such as flow rate of gas as applied to food products

4

to achieve a desired speed of removal of surface moisture for efficient operation.

(**A40-41**).

On appeal, Appellant asserted the following:

Independent claim 11 requires, in part, the steps of providing a "supply means for gas (6, 7; 21, 22; 39; 50) adapted to generate plurality of gas flows (11). . .[that] originate from placed-apart slots (52) to blow liquid from the food product (2, 23, 31) <u>in a number of phases</u> by a number of <u>successive</u> and <u>mutually separated</u> <u>gas knives</u>." (Emphasis added). Neither Braun nor Hoddinott directly discloses or suggests a plurality of gas flows originating from placed apart slots that blows liquid from a food product in a number of phases by a number of successive and mutually separated gas knives.

Braun fails to meet the limitations of independent claim 11 because Braun is limited to disclosing a conduit 1 that supplies drying gas through a continuous narrow slot 4, rectangular openings 5, or circular openings 6 as the tubular product 3 that is conveyed over a channel in a recess 2 over a channel, or alternatively, as the tubular product 3 is conveyed spirally in a tube 10. Braun contains no disclosure of a plurality of gas flows which <u>blow</u> liquid from the tubular product in <u>phases</u> by a number of <u>successive</u> and <u>mutually separated</u> <u>gas knives</u>, as is required by independent claim 11. (See Braun, page 2, col. 1, line 5 – col. 2, line 74; see also, Figs. 1 – 11). Specifically, Braun does not teach that the openings 5, 6 blow liquid from the product or that the openings represent successive, mutually separated gas knives that blow liquid from the product in phases. Instead Braun's disclosed openings 5, 6 are nothing more than slots through which drying gas flows supplied via a conduit 1. (See Braun, page 2, col. 1, line 5 – col. 2, line 74; see also, Figs. 1 – 11).

(**A29-30**).

On July 22, 2013, the Board affirmed the Examiner's rejection of claims

11-14.  (**A42**).  In support of its holding, the Board stated the following:

> Concerning the § 102 rejection of claim 11, Appellant argues that "Braun does not teach that the openings 5, 6 blow liquid from the product or that the openings represent successive, mutually separated gas knives that blow liquid from the product in phases" (App. Br. para. bridging 3-4; *see also* Reply Br. 2-4). According to Appellant, "[i]nstead Braun's disclosed openings 5, 6 are nothing more than slots through which drying gas flows supplied via a conduit 1" (App. Br. para. bridging 3-4).

> As Appellant implicitly concedes, Braun's openings 5 are in the form of placed-apart slots (Braun 2, left col., 11. 24-27 (cited at Ans. *5); see also* Braun Fig. 2). These placed-apart slots/openings 5 of Braun, like those recited in claim 11, necessarily would create successive and mutually separated gas knives, and Appellant provides the appeal record with no explanation to the contrary. Likewise, the separate gas flows originating from Braun's slots/openings 5 necessarily would blow liquid from food product 3 in the course of achieving the drying objective desired by Braun (Braun 1, right col., 11. 35-55 (cited at Ans. *5); see also* Braun claim 5). Again, Appellant does not offer a contrary explanation in the record of this appeal.

> For the above reasons, we are not persuaded by Appellant's argument against the § 102 rejection of claim 11 as anticipated by Braun. Appellant does not present separate arguments concerning the § 102 and § 103 rejections of dependent claims 12-14 based on Braun *(see* App. Br. 5). Therefore, we sustain each of the Examiner's § 102 and § 103 rejections based on Braun.

(A3-A4)**.**

## VI.    SUMMARY OF THE ARGUMENT

The Board erred in concluding that Braun would necessarily blow fluid

off of the food product for four reasons. First, Braun does not teach use of a

food or sausage strand and instead is directed to drying an artificial sausage skin.

(**A166, col. 1:1-8**). Second, Braun does not teach the presence of liquid on the

sausage skin which has a dough like consistency and is not subjected to

coagulation liquid, brining liquid, or rinsing. Third, Braun expressly teaches that

the hot gases flow countercurrent to the sausage skin and not on the sausage skin

for the purpose of suspending the sausage skin without blowing the sausage skin

away. (**A166, col. 1:31-2:7**). Finally, Braun expressly teaches an operation

using low pressure which is insufficient to blow liquid from the sausage skin.

(**A166, col. 2:40-46**). Accordingly, Appellant respectfully requests that the

Board's ruling be over ruled.

## VII. ARGUMENT

### I. Standard Of Review.

#### A. Appellant's Invention

Appellant's application is directed to a device for removing liquid from

the surface of a food strand during displacement of the food strand (**A123**). In

the production and processing of a food strand, often the food strand is treated

with a liquid for coagulating, adding liquid smoke, or rinsing the food strand.

*Id.* Sometimes the applied liquid can have an adverse effect on the food strand

and therefore it is desirable to remove the liquid from the surface of the food strand. *Id.*

At the time of filing, one way of removing liquid from the surface of a food strand was to carry a food strand through an opening in a flexible body. *Id.* The flexible material would engage the food strand and with some resilience would brush or scrape the sausage strand to remove the liquid adhering to the surface of the sausage strand. *Id.* While effective in removing liquid, the flexible body could become jammed leading to great contamination and considerable loss of product. *Id.*

To overcome these deficiencies, Appellant invented a device shown in part in the figure below.



FIG. 1

(**A130**).

As shown above, a sausage strand 2 is advanced by a roller conveyor 4 in

a transport direction P1.  (**A126**).  Disposed parallel to sausage strand 2 is a

housing 6 in which a number of openings 7 are arranged.  *Id.*  A conduit 9,

through which air is supplied by a fan 10 is connected to housing 6 such that air

is blown into housing 6 according to arrow P2.  *Id.*  As a result of the supply of

air to housing 6, a number of successive gas flows 11 are created in the direction

of the transport of the sausage strand, whereby the liquid 3 is blown from strand

2 in a number of phases and falls downward in the form of drops 12.  *Id.*  Thus,

Appellant's device efficiently removes adhering liquid from a food stand

without the possibility of disruption associated with the prior art.  (**A123**).

## B.    U.S. Patent No. 2,211,490 By Braun

Unlike Appellant's invention, Braun is directed to a device that

simultaneously dries and conveys a tubular product also known as a casing.

(**A166, col. 1:1-18**).  In the manufacture of tubular products, which may be used

as artificial sausage skins, from solutions or fibrous masses of vegetable or

animal origin, the drying of the tubes had been done by inflating the tube with

gas and conveying the inflated tube through long drying chambers, in which hot

air or another hot gas plays over the tubes from all sides.  *Id.*

One of the problems associated with this process was that the elasticity of

the tubes was considerably diminished as a result of stresses produced by

friction against the conveyor. (***Id.*, col. 1:31-36**). As a result, when the tubes were used as artificial sausage skins, the tubes would burst upon being filled or during boiling. (***Id.*, col. 1:41-44**).

To overcome the problems with the prior art, Braun developed a device where the tubular product could be dried and conveyed where the tube to be dried is conveyed in a suspended condition in a countercurrent to a hot stream of gas. Thus, avoiding contact with the conveyor and the disadvantages that accompany such contact with the conveyor. (***Id.*, col. 1:45-49**).



As shown in the Figure above, the tube 3 is inflated and conveyed with gas from annular nozzle 8 over a channel 2. (**A167, col. 2:23-26**). Hot gas flows from channel or conduit 1 through narrow openings 5 in countercurrent to tube 3. (**A166, col. 1:51-55**).

As a result, the tube 3 becomes suspended in the gas stream and is not blown away by the gas stream. (***Id.*, col. 2:1-3**). Further, the hot gas stream plays over the tube 3 on all sides of the tube 3 without any appreciable friction. (***Id.*, col. 2:7-10**). Thus, Braun's device is directed to suspending and drying

sausage casing and not removing liquid from the surface of a sausage strand using gas knives.

### C. The Gas Flows Of Braun Do Not Necessarily Blow Liquid From The Food Product

The Board erred when it concluded that "the separate gas flows originating from Braun's slots/openings 5 necessarily would blow liquid from food product in the course of achieving the drying objective desired by Braun." (**A3-A4**). This conclusion is not consistent with the teaching of Braun.

To begin, claim 11 requires that liquid be blown from a food product that is supplied as a food strand. (**A32**). Appellant's specification provides an example of a food strand as an extruded sausage strand (**A123**) and consistently refers to a sausage strand 2 throughout. (**A126-A127**). Braun does not teach this limitation and instead teaches a tubular product 3 that is suspended by and conveyed over openings 5. (**A166, col. 1:51 - col. 2:3**). Braun provides an example of the tubular product as being used as artificial sausage skins or what is commonly known as a casing. (***Id.*, col. 1:1-8**). Therefore, Braun teaches conveyance of a sausage skin and not a sausage/food strand, which is required by claim 11 and, therefore, does not teach liquid being blown from a food product.

Second, even if one considers the sausage casing of Braun to be a sausage

strand, there is no express disclosure from Braun that there is liquid on the surface of the sausage casing.  In the production of artificial sausage casings, there is no liquid on the surface of the casing as the product has not been subjected to a coagulating liquid, liquid smoke, or a rinse which is common in the production of a sausage strand.  (**A123**).  In contrast, the artificial sausage casing during production has a consistency similar to bread dough and therefore only needs to be dried.  (cf, 123)  As there is no liquid on the surface of the sausage casing, there is no teaching or need for the Braun device to blow a liquid which is not present from the food product.

Third, Braun expressly teaches that the hot gas flows through narrow openings in countercurrent to the tube/casing 3.  (**A166, col. 1:45-55**).  The term countercurrent has the ordinary meaning of a current running in an opposite direction to another current.[1]  As the term relates to Braun, the tube/casing 3 is

---

[1] *See e.g.*, www.thefreedictionary.com/countercurrent defining countercurrent in the following manners:

> "*A current that flows in an opposite direction to the flow of another current.*" From The American Heritage® Dictionary of the English Language, Fourth Edition copyright ©2000 by Houghton Mifflin Company. Updated in 2009. Published by Houghton Mifflin Company.

> "[*A*] *current running in an opposite direction to another current.*"  From Random House Kernerman Webster's College Dictionary, © 2010 K Dictionaries Ltd. Copyright 2005, 1997, 1991 by Random House, Inc.

--------------------------------------------------------------------------------

conveyed away from annular nozzle 8 and the gas flow is opposite and parallel to tube/casing 3 and not onto the tube/casing 3 to blow off liquid that is not even present on the surface of the tube/casing 3.  (**A166, col. 1:45-55**).  The reason for the countercurrent parallel flow is so that the tube/casing 3 becomes suspended in the gas stream and is not blown away.  (***Id.*, col. 2:1-3**).

Fourth, the hot gas flowing through the slots/openings 5 of Braun do not have sufficient pressure to blow liquid from a food product even if liquid were present, which it is not.  Braun expressly teaches that the drying and conveying operation is carried out at relatively low pressure.  (***Id.*, col. 2:35-46**).  The amount of pressure needed is sufficient to suspend the sausage tube/casing 3 and not to blow away the tube/casing 3.  (***Id.*, col. 2:1-3**).  Further, the gas flows do not create any appreciable friction and instead play over the tube/casing 3 on all sides to dry the tube/casing 3.  (***Id.*, col. 2:7-10**).  That Braun has insufficient pressure to blow liquid of the tube/casing 3 is further supported by the use of hot gas which is necessary for drying.  (***Id.*, col. 1:50-55**).

## VIII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Because Braun does not teach use of a food strand, because there is no liquid on the surface of the sausage casing, because the hot gas flows parallel and countercurrent to the casing, and because Braun teaches the use of low pressure insufficient to blow liquid from the casing, Braun does not necessarily

teach that the gas that flows from openings 5 would blow liquid from the food product. As such, Braun dot not, and cannot, teach or suggest each and every limitation of Appellant's claims at-issue. Accordingly, Appellant respectfully requests that the Board's affirmation of the Examiner's rejection be overturned.

                        Respectfully submitted,

                        /s/Timothy J. Zarley
                        Timothy J. Zarley
                        Attorney for Appellant
                        ZARLEY LAW FIRM, P.L.C.
                        400 Locust Street
                        Capital Square, Suite 200
                        Des Moines, IA 50309
                        Telephone:  (515) 558-0200
                        Facsimile:  (515) 558-7790

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/718,322 | 09/12/2007 | Adrianus Johannes Maria Reijers | P07094US0-REIJERS | 4723 |

34082        7590        07/22/2013

ZARLEY LAW FIRM P.L.C.
CAPITAL SQUARE
400 LOCUST, SUITE 200
DES MOINES, IA 50309-2350

| EXAMINER |
|---|
| YOO, HONG THI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1793 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/22/2013 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kmcallister@zarleylaw.com

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* ADRIANUS JOHANNES MARIA REIJERS

_____

Appeal 2012-004255
Application 11/718,322
Technology Center 1700
_____

Before BRADLEY R. GARRIS, TERRY J. OWENS, and PETER F.
KRATZ, *Administrative Patent Judges*.

GARRIS*, Administrative Patent Judge*.

DECISION ON APPEAL

Appeal 2012-004255
Application 11/718,322

Appellant appeals under 35 U.S.C. § 134 from the Examiner's decision rejecting claims 11-14. We have jurisdiction under 35 U.S.C. § 6.

We AFFIRM.

Appellant claims a method for removing liquid from the surface of a food product (2) in the form of a strand wherein the food strand is successively carried through a plurality of gas flows (11) and "wherein the separate gas flows (11) originate from placed-apart slots (52) to blow liquid from the food product . . . in a number of phases by a number of successive and mutually separated gas knives" (claim 11; *see* Figs. 1, 4).

A copy of sole independent claim 11, taken from the Claims Appendix of the Appeal Brief, is set forth below:

11. Method for removing liquid (3, 24, 36) from the surface of a food product (2, 23, 31), characterised in that the food product (2, 23, 31) is supplied as a food strand (2, 23, 31), which food strand (2, 23, 31) is successively carried through a plurality of gas flows (11) wherein a supply means for gas (6, 7; 21, 22; 39; 50) is placed adjacently of a transport route of the food product and the supply means for gas (6, 7; 21, 22; 39; 50) are adapted to generate the plurality of gas flows (11) crossing the transport route successively in the direction of transport wherein the separate gas flows (11) originate from placed-apart slots (52) to blow liquid from the food product (2,

2

Appeal 2012-004255
Application 11/718,322

23, 31) in a number of phases by a number of successive and
mutually separated gas knives.

The Examiner rejects claims 11 and 12 under 35 U.S.C. § 102(b) as
anticipated by Braun (US 2,211,490, patented August 13, 1940) and claims
13 and 14 under 35 U.S.C. § 103(a) as unpatentable over Braun.

The Examiner also rejects claims 11-14 under 35 U.S.C. § 103(a) as
unpatentable over Hoddinott (US 4,159,579, patented July 3, 1979).

Concerning the § 102 rejection of claim 11, Appellant argues that
"Braun does not teach that the openings 5, 6 blow liquid from the product or
that the openings represent successive, mutually separated gas knives that
blow liquid from the product in phases" (App. Br. para. bridging 3-4; *see
also* Reply Br. 2-4). According to Appellant, "[i]nstead Braun's disclosed
openings 5, 6 are nothing more than slots through which drying gas flows
supplied via a conduit 1" (App. Br. para. bridging 3-4).

As Appellant implicitly concedes, Braun's openings 5 are in the form
of placed-apart slots (Braun 2, left col., ll. 24-27 (cited at Ans. 5); *see also*
Braun Fig. 2). These placed-apart slots/openings 5 of Braun, like those
recited in claim 11, necessarily would create successive and mutually
separated gas knives, and Appellant provides the appeal record with no
explanation to the contrary. Likewise, the separate gas flows originating
from Braun's slots/openings 5 necessarily would blow liquid from food

3

Appeal 2012-004255
Application 11/718,322

product 3 in the course of achieving the drying objective desired by Braun (Braun 1, right col., ll. 35-55 (cited at Ans. 5); *see also* Braun claim 5). Again, Appellant does not offer a contrary explanation in the record of this appeal.

For the above reasons, we are not persuaded by Appellant's argument against the § 102 rejection of claim 11 as anticipated by Braun. Appellant does not present separate arguments concerning the § 102 and §103 rejections of dependent claims 12-14 based on Braun (*see* App. Br. 5). Therefore, we sustain each of the Examiner's §102 and §103 rejections based on Braun.

In contesting the § 103 rejection of claims 11-14 based on Hoddinott, Appellant correctly points out that Hoddinott teaches using subatmospheric pressure to draw air around a coated wire (i.e., strand material) and through openings 50 (App. Br. 4) "to produce an effective and balanced flow of air around the strand material to be dried" (Hoddinott col. 4, ll. 47-48 (cited at Reply Br. 5)). In light of this teaching, Appellant argues that Hoddinott contains no disclosure of the claim 11 feature wherein separate gas flows blow liquid from a food product in a number of phases by a number of successive and mutually separated gas knives (App. Br. 4, Reply Br. 5).

We find convincing merit in Appellant's argument. The Examiner's response to this argument (Ans. 9-10) fails to explain why Hoddinott is believed to satisfy the claim feature under review despite the fact that such a

4

Appeal 2012-004255
Application 11/718,322

belief is contradicted by Hoddinott's above teaching of balanced airflow around the strand material.

For this reason, the § 103 rejection based on Hoddinott will not be sustained.

The decision of the Examiner to reject claims 11-14 is affirmed.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a) (2011).

**<u>AFFIRMED</u>**

tc

PROOF OF SERVICE

The undersigned hereby certifies that the foregoing was served on counsel of record by electronic means via the Court's CM/ECF on December 30, 2013 to the following:

Mr. Nathan K. Kelley
Acting Solicitor
Office of Solicitor
U.S. Patent & Trademark Office
600 Dulany Street
Madison West - Room 08C43
Alexandria, Virginia
Telephone:  (571) 272-9035
Facsimile:    (571) 273-0373
E-mail: nathan.kelley@uspto.gov

Ms. Mary L. Kelly
Associate Solicitor
Office of Solicitor
U.S. Patent & Trademark Office
600 Dulany Street
Madison West - Room 08C43
Alexandria, Virginia
Telephone:  (571) 272-9035
Facsimile:    (571) 273-0373
E-mail: mary.kelly@uspto.gov

Mr. Michael S. Forman
Associate Solicitor
Office of Solicitor
U.S. Patent & Trademark Office
600 Dulany Street
Madison West - Room 08C43
Alexandria, Virginia
Telephone:  (571) 272-9035
Facsimile:    (571) 273-0373
E-mail: michael.forman@uspto.gov

/s/Timothy J. Zarley
TIMOTHY J. ZARLEY
Attorney for Appellant
ZARLEY LAW FIRM, P.L.C.
400 Locust Street
Capital Square, Suite 200
Des Moines, Iowa 50309-2350
Phone:  515-558-0200
E-mail:  tzarley@zarleylaw.com
Fax:  515.558.7790

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

■      this brief contains 3194 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.  32(a)(6) because:

■      this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point typeface.

/s/Timothy J. Zarley
TIMOTHY J. ZARLEY
Attorney for Appellant
ZARLEY LAW FIRM, P.L.C.
400 Locust Street
Capital Square, Suite 200
Des Moines, Iowa 50309-2350
Phone:  515-558-0200
E-mail:  tzarley@zarleylaw.com
Fax:  515.558.7790

Dated:  December 30, 2013